UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

RCS TRANSPORTATION LLC, et al.                                                              PLAINTIFFS

v.                                                                        CIVIL ACTION NO. 3:06CV-639-S

CALIBER MANAGEMENT, INC., et al.                                                            DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the court on motion of the defendants, Caliber Management, Inc. and Boyd Dickens, to dismiss for lack of personal jurisdiction and for insufficiency of service of process under Fed.R.Civ.P. 12(b)(2) and (b)(5) (DN 6). For the reasons set forth herein the motion will be denied.

The defendant, Caliber Management, Inc., is a Maryland Corporation with its principal place of business in Maryland. The defendant, Boyd Dickens, is President and Chief Operating Officer of Caliber and is a citizen and resident of the state of Maryland. Caliber is a competitor of the plaintiff, RCS Transportation, LLC, a contracting company in the business of vehicle distribution. The plaintiff, Brian Carsey worked as a Director and Vice President of Caliber until June 1, 2005 when he went to work for RCS. While Carsey was employed with Caliber, Dickens was his supervisor. Carsey is a resident of Indiana and is the Vice President of RCS, a Kentucky Corporation with its headquarters and principal place of business in Kentucky.

Carsey alleges that after he left employment with Caliber his association with Dickens soured. He claims that Dickens created imposter e-mail accounts in Carsey's name and posed as "Brian Carsey" in various e-mail and instant message communications.

Carsey claims that on December 7, 2006, RCS was notified that it had successfully acquired a new customer, Norfolk Southern/NSTBC which had done a significant amount of business in the

past with Competitive Auto Ramp Services, an affiliate of Caliber. Carsey alleged that four days later on December 11, 2006, Dickens e-mailed a Quick Time movie clip to sixteen high level executives of RCS's most important customers. Carsey alleges that Dickens used an imposter e-mail account to send the movie clip in order to make it appear that Carsey was the sender. This movie clip had been sent by Carsey to Dickens four years earlier as some sort of private joke. Carsey and RCS now apparently having suffered some embarrassment and humiliation by the movie clip's dissemination at this later date[1], have sued Caliber and Dickens for Lanham Act violations, trade libel, tortious interference with business relations, unfair competition, and intentional infliction of emotional distress.

The defendants have moved to dismiss for lack of personal jurisdiction[2] on the ground that Caliber and Dickens do not have the requisite minimum contacts with Kentucky. By its own description, Caliber's business purpose is "among other things, to provide certain limited administrative services to approximately twelve different independently operated corporations across the United States which are engaged in the business of transporting automobiles by train...While many of these companies use 'Caliber Auto Transfer' in their names, each is independently incorporated and operated." Mem. in Support of Motion to Dismiss, p. 4. Caliber describes in detail its "limited administrative services" as follows:

> Caliber handles certain bookkeeping functions relating to payroll, accounts receivable, accounts payable, and general ledgers for each of these independent corporate entities referred to above. Each corporation has its own bank account and corporate books and records...Caliber has developed relationships with various railroads, car manufacturers and other businesses involved in the automobile distribution process and has expertise in addressing issues that may arise in that business. Thus, when called upon by managers of the independent Caliber Auto

---

[1] While the content of the video has not been described, one can only imagine that the movie clip "Carsey's_ass.mov" might not show the most flattering side of Mr. Carsey.

[2] The defendants have also sought dismissal for insufficiency of service of process on the ground that KRS 454.210(3)(a) states that service may be made"[w]hen personal jurisdiction is authorized by this section..." Thus the determination of the sufficiency of process on the basis articulated by the defendants rises and falls on the outcome of the issue of personal jurisdiction.

> Transfer companies, Caliber employees may from time to time provide advice or assistance to those independent entities regarding questions that they may have about, or in negotiations relating to, railroad and labor contracts...Just one of these independent companies, Competitive Auto Ramp Services, Inc. ("CARS"), is located in Kentucky. CARS maintains its own office and staff of employees in Kentucky. CARS' own employees run CARS' office and business operations in Kentucky. Indeed, CARS has approximately 125 employees working for it in Kentucky and it handles all of the human resources and paperwork relating to the employment of those workers...CARS personnel prepare all invoices for payments due to CARS from third parties and payroll records for wages that are to be paid each pay period to CARS employees. They also prepare the information relating to the accounts payable by CARS. CARS personnel send the invoices, payroll records and any other necessary information to Caliber in Maryland, and Caliber personnel process them in Maryland. Payroll deposits and payments to third parties are made through a CARS Bank of America bank account that is maintained in Maryland...On relatively infrequent occasions, Caliber employees may travel for a specific limited purpose to an area where one of the independent companies is based or where a particular meeting has been called by a representative of a railroad or an automobile manufacturer. Thus, for example, Andy Mell...made one visit to Kentucky in December, 2006 to inspect the facilities operated by CARS...Managers of the independent companies may also from time to time seek advice from Caliber about a significant labor or contract issue...Caliber employees typically address these issues from their home offices, where the managers of the independent companies will contact them with any questions...On occasion, a Caliber employee may travel to a particular railroad facility...In early December, 2006, Tom Huffman and Boyd Dickens traveled to the Shelbyville, Kentucky mixing center facility. They went there in response to [a] strike...to assess the scope and nature of the strike and to make sure that the union was not representing that any Caliber Auto Transfer company had engaged in actions that gave rise to the strike...Mr. Dickens made only one other trip to Kentucky in December, 2006, at the request of one of the railroad representatives...

Mem. in Support, pp. 3-6, citing to affidavits of Caliber Vice President and Secretary Jacque Hildebrand and Dickens. With respect to Dickens' employment with Caliber and contacts with Kentucky, the defendants state:

> Mr Dickens is President of Caliber and has served in that capacity since it was formed...He performs the majority of his work from his home in Maryland or...Caliber's office in Millersville, Maryland...As part of his job at Caliber, Mr. Dickens deals with railroad representatives, automobile manufacturers and personnel from other companies involved in the distribution of newly manufactured automobiles. When asked to do so, he provides advice or assistance to the independent Caliber Auto Transfer companies concerning pricing, the allocation of costs, contract terms, and safety and labor union-related issued...As part of his business, Mr. Dickens maintains ongoing communications with the decision makers in other companies involved in the distribution chain. The overwhelming majority of his communications with such persons are done by telephone, e-mail or written

- 3 -

> correspondence...He may, however, travel at times to meet with such representatives in person when they request to see him...As part of the distribution effort for new cars, Ford Motor Company has established four primary points of transfer, or "mixing centers," as they call them...The four mixing centers are in Chicago, Illinois; Shelbyville, Kentucky; Kansas City, Missouri; and Fostoria, Ohio. Mr. Dickens has been to each of these mixing centers when summoned there by railroad or automobile manufacturer representatives. In addition, he has also traveled to more than a dozen other sites operated by Union Pacific and Norfolk Southern railroads for bid meetings and other such meetings that they may schedule from time to time...Since Caliber was formed in December 2004, Mr. Dickens has also been to most of the cities where any of the independent corporations that Caliber provides assistance to has a facility.

Mem. in Support, pp. 6-8.

The above-quoted description offered by officers of Caliber of its business operations provides some insight into the nature of the relationship between Caliber and its independent affiliates. While Caliber pays lip service to the proposition that scrupulous attention is paid to the corporate formalities, the actual autonomy of these affiliates is not entirely clear.

On a motion to dismiss for lack of personal jurisdiction which is decided on the basis of the pleadings and affidavits, the court must consider "the pleadings and affidavits in the light most favorable to the Plaintiff, and Plaintiff need only make a *prima facie* showing of jurisdiction to defeat Defendants' motion." *Papa John's International, Inc. v. Entertainment Marketing & Communications, International, Ltd.*, 381 F.Supp.2d 638, 641 (W.D.Ky. 2005), *quoting*, *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269 (6th Cir. 1998); *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

> As noted in *Turek v. Mold-Rite Tool, Inc.*, 2006 WL 3068813 (E.D.Ky. 2006),

> Kentucky courts construe the state's long-arm statute as coextensive with the limits of due process. *Wilson v. Case*, 85 S.W. 3d 589, 592 (Ky. 2002). The Court may exercise jurisdiction over Defendants if personal jurisdiction is consistent with the requirements of federal due process. Therefore, personal jurisdiction exists in the case *sub judice* if the Defendants have "minimum contacts" with Kentucky "'such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Gateway Press, Inc. v. LeeJay, Inc.* 993 F.Supp. 578, 580 (W.D.Ky. 1997)(quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Through its long-arm statute "Kentucky has elected to assume personal jurisdiction over a non-resident tort-feasor whose activities outside the state result

> in injury in this state only if that tort-feasor regularly does or solicits business within the state or has other substantial connection to the Commonwealth." *Pierce v. Seraphin*, 787 S.W.2d 705, 707 (Ky.Ct.App. 1990), *quoted in Auto Channel, Inc. v. Speedvision Network, LLC*, 995 F.Supp. 761, 764 (W.D.Ky. 1997)..."Courts have determined that 'the long-arm statute within this jurisdiction allows Kentucky courts to reach to the full constitutional limits of due process in entertaining jurisdiction over non-resident defendants.'" *Id.* (quoting, *Mohler v. Dorado Wings, Inc.*, 675 S.W.2d 404, 405 (Ky.Ct.App. 1984)).

*Turek*, 2006 WL 3068813 at *2.

In *Conti v. Pneumatic Products Corp.*, 977 F.2d 978, 981 (6th Cir. 1992), the court stated that "[s]pecific jurisdiction is exercised over a defendant in a suit arising out of or related to the defendant's contacts with the forum." In assessing the existence of specific jurisdiction, "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968); *Theunissen v. Matthews*, 935 F.2d 1454 (6th Cir. 1991). As stated in *LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293, 1300 (6th Cir. 1989), "[P]arties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other state for the consequences of their activities."

In an intentional tort-based action, purposeful availment has been found where a non-resident defendant engaged in wrongful conduct targeted at a plaintiff in the forum state. When the communications themselves create the tort, the "defendant is purposefully availing himself of the privilege of causing a consequence" in the forum state. *Wien Air Alaska Inc. v. Brandt*, 195 F.3d 208, 213 (5th Cir. 1999). *See also*, *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984); *Neal v. Janssen*, 270 F.3d 328 (6th Cir. 2001); *D.C. Micro Development, Inc. v. Lange*, 246 F.Supp.2d 705 (W.D.Ky. 2003).

In this case, the causes of action arise from the sending of the e-mail to individuals located in Kentucky who are high level executives with companies with which the plaintiffs do business.[3] It is alleged that the defendants availed themselves of the privilege of causing a consequence in Kentucky.

Clearly, the causes of action arises from the plaintiffs' contacts with Kentucky; that is, allegations of Lanham Act violations, trade libel, tortious interference with business relations, unfair competition, and intention infliction of emotional distress as a result of the dissemination of a damaging and embarrassing e-mail to plaintiffs' Kentucky customers.

When "purposeful availment" and "arising from" elements of the *Mohasco* test are found, "an inference arises that the third, fairness, is also present; only the unusual case will not meet this third criterion." *First National Bank of Louisville v. J.W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir. 1982).

The defendants have stated that they provide managerial and professional support and input to various of its affiliates in various states including Kentucky. The defendants come to Kentucky when needed to the Shelbyville hub, and stay in contact by phone, e-mail and fax with various entities licensed and doing business in Kentucky which Caliber services. While the defendants contend that their affiliates are wholly independent, their obvious reliance upon Caliber for much assistance in both business and administration diminishes the defendants' assertion.

Caliber had and continues to have significant and ongoing contacts with its affiliate CARS, had business dealings which brought Dickens and others to Kentucky, and competed for business in Kentucky such as with Norfolk Southern. Not only did the defendants come to Kentucky from time to time, but they work with their Kentucky affiliates, providing professional and managerial

---

[3]Among them were Murphy at Norfolk Southern, O'Brien at CSX, and Wallace and Vickers at UPS. The plaintiffs state in their memorandum that these four individuals all work and reside in Kentucky. We infer from this statement and we have been shown nothing to dispute that these individuals received the e-mail in Kentucky.

advice and assistance. The complaint alleges that the forwarding of the damaging e-mail was designed to and did affect the plaintiffs' business relationships in Kentucky and elsewhere. The Complaint alleges that a mere four days after RCS was notified that it had acquired Norfolk Southern as a customer, the damaging e-mail was disseminated by Dickens. The plaintiffs contend that this action was borne of the fact that Caliber's affiliate CARS had previously done a significant amount of business with Norfolk Southern but had now lost that business or at least had to compete for that business with RCS. We conclude that the defendants' degree of involvement in the operations of its Kentucky affiliates, albeit without common bank accounts, and its alleged direction of the damaging e-mail at Kentucky business contacts renders the exercise of jurisdiction over the defendants reasonable.

The plaintiffs need only make a *prima facie* showing to defeat a motion to dismiss for lack of personal jurisdiction. *CompuServe, Inc.*, 89 F.3d at 1262. The court concludes that the plaintiffs have made such a showing, and the motion must therefore be denied.

Motion having been made and for the reasons set forth hereinabove and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion of the defendants, Caliber Management, Inc., et al., to dismiss (DN 6) is **DENIED.**

**IT IS SO ORDERED.**